IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENZIL LAWRENCE, | ) | Case No. 19-cv-05078 |
| Plaintiff, | ) ) ) | Hon. Mary M. Rowland, presiding |
| v. | ) ) | |
| JAMES P. CORCORAN, individually, as Statewide Forensic Medical Director for the Illinois Department of Human Services, Medical Administrator III, | ) ) ) ) ) ) | **JURY DEMAND** |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT CORCORAN'S RULE 12(b)(6) MOTION TO DISMISS**

NOW COMES the Plaintiff, Denzil Lawrence, by and through his attorneys, the Law Offices of Kretchmar and Cecala, P.C., opposing the Motion To Dismiss, as follows.

**I. INTRODUCTION**

The principle arguments in Defendant's 12(b)(6) motion can be summed up as, "I stole Plaintiff's freedom fair and square." First, Defendant wants the Plaintiff's claim dismissed for his bald assertion that the Plaintiff received due process under Illinois law. However, Defendant fails to cite any authority for the proposition that presenting and coercing falsified testimony and documents to imprison someone constitutes due process in Illinois (or any other jurisdiction). Defendant knows full well what Plaintiff alleges was

done, from the Complaint. Defendant merely attempts to dispute the alleged facts, which are very clearly well plead and state a claim for violations of the U.S. Constitution.

Defendant's second bald assertion is that the Plaintiff's Complaint does not sufficiently allege (to the Defendant's own arbitrary standard) that the Defendant personally oversaw the creation and use of the false information to imprison the Plaintiff. Defendant argues that use of the term "information and belief" somehow causes notice pleading to not provide notice. But Defendant's pleading standard does not exist in the law. Defendant's points may be appropriate in a closing argument at trial to tussle over the sufficiency of evidence. However, at this stage of the case, it is improper to merely dispute well plead facts, or to pretend proof is required to state a claim. Tellingly, the Defendant uses the exact language of the Plaintiff's Complaint to explain the very facts he pretends do not exist in the pleading. The exact language of the Plaintiff's complaint does, in fact, plead the elements needed to prevail against dismissal pursuant to Rule 12(b)(6) – which are that Defendant Corcoran personally and unlawfully caused the filing of a false petition, and that the false petition was the direct cause of the deprivation of the Plaintiff's Constitutional rights.

## II. STANDARD OF REVIEW

The Federal Rules require that the Plaintiff's Complaint plead sufficient facts which, taken as true, support the legal claims as outlined in the complaint. A motion under Rule 12(b)(6) does not require that the Court determine whether the Plaintiff can prevail.

Such a motion merely tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012).

Under the Federal Rules the Plaintiff's Complaint must merely include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation omitted). In reviewing the sufficiency of a complaint, a court accepts the well-pleaded facts as true. *Alam v.Miller Brewing* Co., 709 F.3d 662, 665- 66 (7th Cir. 2013).

### III. ARGUMENT

**1.) Plaintiff's Complaint adequately states a cause of action for Fourth Amendment unlawful seizure (false imprisonment) and/or Fourteenth Amendment denial of due process pursuant to 42 U.S.C. § 1983: Plaintiff clearly alleges he was held for three months under a *falsified* "commitment petition" that was filed to deny the Plaintiff his constitutional rights.**

Courts take no issue, nor can the Defendant, with the fundamental proposition that involuntary commitment, despite any professed benevolent purposes of "mental health" and "treatment", remains a massive deprivation of liberty that requires due process protection. *People v. James W. (In re James W.)*, 2014 IL 114483 at P41, 10 N.E.3d 1224 at 1236, 381 Ill. Dec. 621 at 633; *Addington v. Texas*, 441 U.S. 418 (1979); *Jackson v. Indiana*, 406 U.S. 715 (1972); *Humphrey v. Cady*, 405 U.S. 504 (1972); *In re Gault*, 387 U.S. 1 (1967); *Specht v. Patterson*, 386 U.S. 605 (1967).

Defendant cites *Brown v. Dart*, 876 F.3d 939, 941(7th Cir. 2017) for the rule that "false imprisonment for the purposes of a Section 1983 claim is defined as detention without legal

process." *Brown* gets the rule from *Wallace v. Kato*, 549 U.S. 384 (2007) at 389. The context in *Wallace*, from the opinion by Justice Scalia, includes the following:

> "False arrest and false imprisonment overlap; the former is a species of the latter. Every confinement of the person is an imprisonment, whether it be in a common prison or a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is…. The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*… and the allegations before us arise from respondents' detention of petitioner *without legal process* in January 1994. They did not have a warrant for his arrest."

At 388-389 (internal quotation marks and citations omitted, *emphasis* in the original).

The key fact of this context was that Petitioner Wallace had been transported to a police station for interrogation, and although he may have initially gone willingly, his presence there escalated to an involuntary seizure at some point prior to his formal arrest. Because no warrant (based on probable cause) had issued, Wallace's detention at the police station was illegal, and his imprisonment was *without legal process* from the moment he was detained until he was bound over by a magistrate or arraigned, at (but not before) which point, legal process was actually initiated against him.

An arrest warrant based on false statements in an affidavit does not provide probable cause and results in false arrest/false imprisonment. *Lawson v. Veruchi*, 637 F.3d 699 (7th Cir. 2011) at 704. Also, "A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003).

Thus, whether any particular detention is or is not accompanied by *legal process* is an issue of fact. The Defendant cannot simply assert that the Illinois Mental Health Code procedure for involuntary commitment is sufficient to protect patients' due process rights, and

the Plaintiff was obviously afforded due process because Illinois law was followed merely by Melissa Perkins filing a (nominal) commitment petition *form*.

Plaintiff clearly alleges that Illinois law was *not* followed, and there was thus no legal process. The commitment petition was *coerced* by the Defendant, who knowingly, intentionally, or with reckless disregard for the truth, made false statements which should have been true for the petition to have any legitimate effect, as probable cause has for an arrest warrant. See *inter alia*, Paragraphs 17 through 22, and Paragraph 27a of the Complaint, alleging not only that the commitment petition was false and coerced, but also alleging Corcoran's likely motives for the falsification and the coercion.

In his Motion, Defendant is not really complaining about any lack of allegations that would better enable him to answer this Complaint; rather, he is demanding proof at an inappropriate stage of this litigation. Paragraphs 9, 10 and 11 of the Complaint can only be interpreted to allege that the Plaintiff was *not* considered dangerous to himself or others. The fact from Paragraph 6 that Plaintiff had not been taking psychotropic medication for several months before March 2019, can only be interpreted to allege that his continuing mental illness was also considered questionable. To be involuntarily confined by civil commitment past his *Thiem* date of March 20, 2019, Plaintiff would have had to be proven to be, at that time, *both* mentally ill *and* dangerous (*Foucha v. Louisiana*, 504 U.S. 71, 77); and such proof would have had to be beyond a mere preponderance of evidence, to a standard of *clear and convincing* (405 ILCS 5/3-808).

In her opinion in *Manuel v. City of Joliet*, 580 U.S.___ (2017), Justice Kagan pointed out that what may appear to be "legal process" does not extinguish a Fourth Amendment claim for false imprisonment if the supposed "process" is based on false statements. In that case,

arresting officers falsely stated that the Defendant had been in possession of ecstasy, and the ruling on probable cause to detain him for 48 days prior to trial was entirely based on fabricated evidence, thus violating his Fourth Amendment right to be free from illegal seizure of his person. Manuel sat in jail for weeks, pursuant to the judge's probable cause ruling that relied on the police department's fabrications, until an Assistant State's Attorney voluntarily dismissed the criminal charge against him.

In this case, the Plaintiff Lawrence sat at Elgin Mental Health Center for weeks, pursuant to a commitment petition that was based on a fabricated accusation of mental illness and danger to self or others, until the petition was withdrawn by an assistant State's Attorney on the eve of trial. What Defendant Corcoran expects this Court to presume without inquiry to have been "legal process" really wasn't, and it didn't extinguish the Plaintiff's Fourth Amendment claim, especially when the commitment petition was voluntarily dropped by those who filed it. Even as in *Manuel* the police department didn't want to explain why its officers fabricated evidence, perhaps here, Elgin Mental Health Center didn't want to explain why Dr. Corcoran falsified and coerced the civil commitment petition.

**2. The Plaintiff's status on the day he was to be released was that of a detainee with the full protections of the U.S. Constitution against the trickery and falsehoods imposed to cause his false arrest and prolonged imprisonment.**

The Defendant was able to hold the Plaintiff "in custody" because on March 20, 2019, *the very day* Plaintiff was due to be released from Elgin Mental Health Center (having completed his treatment period after a prior finding of NGRI), the Defendant orchestrated a cynical "commitment petition" by trickery, corruption and falsehoods. Commitment following an NGRI verdict does not involve or imply any criminal conviction and is not a prison sentence. It rests upon no purpose for imprisonment, either for punishment or deterrence, but only on the

purpose of treatment for mental illness. An NGRI acquittee is considered to have the same rights as a pretrial detainee. This issue was specifically addressed in the Northern District of Illinois, in the case of *Webber v. Pharis, et. al.*, Case No. 14 C 5987. In that case, Judge Shah held in his February 3, 2015 ruling that an involuntary patient's rights were to be construed similar to those of a pre-trial detainee. The Court specifically cited *Belbachir v. County of McHenry*, 726 F.3d 975 (7th Cir. 2013) and pointed out that in *Belbachir*, the court noted that a civilly detained alien whose detention was not in dispute, was in the same position as a lawfully arrested pretrial detainee and further recognized a similarity between the constitutional statuses of its immigration-plaintiff and the mental-illness-plaintiff. Id., at 979. Judge Shah's order specifically noted the Seventh Circuit's agreement with the position as follows:

> "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)."

The Plaintiff here was supposed to be released on the same day that the Defendant falsely stated he was dangerously mentally ill and engineered the filing of the false petition, only to *punish and imprison* him. The Complaint adequately alleges that Plaintiff was held based on the *falsehoods* in the petition, and because of the Defendant's coercion of Doctor Gill and Social Worker Perkins. The Fourth and Fourteenth Amendment apply in this case as for pretrial detainees, beginning at the moment the Plaintiff's detention was continued after all purpose and possibility of mental health treatment had been constructively abandoned by the state, through the arbitrary, purposeless (actually *corrupt*) actions of the Defendant in imprisoning the Plaintiff beyond his *Thiem* date.

**3. The complaint does not present any actual or implied backdoor attack against Plaintiff's NGRI verdict and commitment prior to March 20, 2019, nor does it implicitly undermine any prior adjudication.**

Defendants mention the *Heck* doctrine apparently to tentatively imply that Plaintiff's claim that the Defendant lied about Plaintiff being mentally ill and dangerous is "dangerously close to the type of claim which is barred…". (Motion, Page 9.) Even were it more than dangerously close (whatever that means), which it isn't, *Heck* cannot apply for the purpose Defendant cites it, because there is no state court judicial decision that the Plaintiff seeks to have reviewed or overturned. Plaintiff is not a "state-court loser" complaining of injuries caused by a state court judgment previously rendered; in fact he is a state court winner, because he pleaded Not Guilty By Reason of Insanity and the state court found accordingly. Thus there is no state court judgment that the Plaintiff considers is wrong, or that he even wishes could be overturned. *Heck* is inapposite here because Plaintiff is not suing for damages caused by any acts which, if proven, would render his conviction invalid: firstly, he was not convicted; and secondly, the acts which Plaintiff alleges caused his damages are so far outside the bounds of anything found or ordered by the state criminal court in which Plaintiff was prosecuted or allowed by the Illinois Mental Health Code, that it might be more accurate to suggest that this litigation serves to uphold the NGRI verdict, and facilitate the legal process which the verdict set in motion for treatment and eventual release. For Defendants' "dangerously close" attempt at logic to work here, falsification of court filings must somehow become valid therapy contemplated by the state criminal court and thereby justified as part of a "sentence." Plaintiff doesn't intend any backdoor attack upon the NGRI finding and commitment term whatsoever, because he agrees with and has no interest or reason to invalidate the NGRI finding or the

commitment term (more accurately his *Thiem* date), set by statutory formula under 730 ILCS 5/5-2-4.

It is interesting that the Defendant partially admits that the information in the commitment petition he coerced his subordinates to file could have contained "a mistake of fact as to the status or severity of Plaintiff's mental illness," after attempting to put the onus back on a court which "judicially declared (him) to have a mental illness." (Motion Page 9, and Footnote 2.) The suggestion that he has opened himself up to criminal liability under 405 ILCS 601(c) (Motion Page 9) may also be quite salient, although this Plaintiff leaves any such contingency to the proper state law enforcement authorities. People are supposedly *medically diagnosed* with mental illness, not merely "judicially declared" to have it. Any judicial declaration relies utterly upon the *truth* of evidence presented by mental health professionals, which is precisely what Plaintiff here alleges was withheld on March 20, 2019.

To be clear, Plaintiff does not allege that he was falsely imprisoned at the time of his NGRI commitment; nor does he allege that a state court was mistaken in finding him in need of inpatient mental health treatment at that time. He alleges rather, that from March 20, 2019, when he was unreasonably seized and denied due process, until the falsified commitment petition was voluntarily withdrawn by the state three months later on the very eve of a jury trial, his involuntary detention was an illegal false imprisonment. Under no imaginable circumstance could a falsified, corrupt commitment petition be considered "legal process".

## IV. CONCLUSION

WHEREFORE, Plaintiff asks the Court to deny Defendant Corcoran's Motion To Dismiss. In the alternative, if the Court does not deny the Motion, Plaintiff asks for leave to

file an amended Complaint pursuant to the instructions of the Court and the Federal Rules of Civil Procedure.

    Respectfully submitted,

                                              By /s/ *S. Randolph Kretchmar*
                                              (One of the Attorneys for the Plaintiff)

*LAW OFFICES OF KRETCHMAR & CECALA. P.C.*
1170 Michigan Avenue, Wilmette, IL 60091
847-370-5410, srandolphk@gmail.com