IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENZIL LAWRENCE,<br><br>Plaintiff,<br><br>v.<br><br>JAMES P. CORCORAN, individually, as Statewide Forensic Medical Director for the Illinois Department of Human Services, Medical Administrator III,<br><br>Defendant. | Case No. 19-cv-5078<br><br>Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Denzil Lawrence brings this action against James Corcoran, alleging false imprisonment and denial of due process. The defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failing to state a claim. For the reasons given below, the Court denies the defendant's motion to dismiss.

**I. Background**

The following factual allegations are taken from the complaint (Dkt. 1) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff Denzil Lawrence claims that Defendant James Corcoran violated his constitutional rights by falsely imprisoning him and denying him due process of law. Dkt.1 at ¶¶22-23. On September 26, 2017, Lawrence, an Illinois resident, was committed to the Illinois Department of Human Services for inpatient mental health

1

treatment after being found incompetent to stand trial. *Id.* at ¶¶3, 5. In state court in February 2018, he was adjudicated not guilty by reason of insanity on charges of arson and criminal damage to property. *Id.* at ¶5. He continued his treatment under state care. *Id.* After initially being held at the Chester Mental Health Center, he was transferred to the Elgin Mental Health Center on August 18, 2018. *Id.* Corcoran is a senior administrator at Elgin. *Id.* at ¶4.

While at Chester, Lawrence decided, with his doctor's acquiescence, to stop taking psychotropic medicine due to their negative side effects. *Id.* at ¶5. He also experienced a "substantial remission" of his earlier symptoms. *Id.* After transferring to Elgin, he was again prescribed psychotropic medication, but by September 2018 he had lost faith in his doctor and chose to stop taking the medication. *Id.* at ¶¶7-8. In Elgin, he made progress towards recovery, followed the facility's rules, and attended therapy. *Id.* at ¶9.

Lawrence's *Thiem* date, the date his commitment expired, was March 20, 2019. *Id.* at ¶5; *see People v. Thiem*, 403 N.E.2d 647 (1980). He believed he would be released on that day and was apparently never disabused of this belief by Elgin staff. Dkt. 1 at ¶11. On March 20, his father arrived from Florida to take him home. *Id.* at ¶14. Lawrence, however, was not released. Instead, that day, an involuntary civil commitment petition alleging that he was mentally ill and a danger to himself or others was filed in Kane County Circuit Court. *Id.* at ¶12-13. The petition was signed by Melissa Perkins, Lawrence's social worker, and supported by certificates by Dr. Vikramjit Gill, his psychiatrist, and Corcoran. *Id.* at ¶¶15-16. As a result of the

2

petition, Lawrence was held for ninety days beyond his *Thiem* date. *Id.* at ¶17. He was released on June 20, 2019, when the petition was dismissed. *Id.*

Lawrence says that the petition included false claims, including "[f]alsly [sic] alleging that Plaintiff was mentally ill." *Id.* at ¶27. These false claims directly led to his extended confinement. *Id.* at ¶17. Lawrence further alleges that Perkins and Gill knew that the petition was inaccurate but filed it due to the coercive pressure of Corcoran, their boss. *Id.*

Corcoran is allegedly prejudiced against patients who refuse psychotropic medication, and he has told patients that he will resist attempts to release patients who refuse them or other psychiatric orthodoxies. *Id.* at ¶18. Corcoran has also created a culture where medical professionals under his supervision know they will suffer negative career outcomes if they fail to coerce patients into taking psychotropic medication. *Id.* at ¶19. This pressure resulted in Perkins and Gill certifying the false petition. *Id.* at ¶22.

These allegations are the basis of Lawrence's claim against Corcoran. Although written as a single claim, Lawrence raises two harms for which he says he should recover. The first is that he was denied due process of law, in violation of the Fourteenth Amendment, and the second is that he was unlawfully seized in violation of the Fourth Amendment. *Id.* at ¶22-23. 42 U.S.C. § 1983 provides a cause of action based these alleged constitutional violations. *Id.* In this motion, Corcoran seeks to dismiss the suit for failing to state a claim.

**II.  Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

In his motion to dismiss, Corcoran argues that (1) Lawrence's due process rights were not violated because his extended confinement was consistent with Illinois law; (2) he has not sufficiently pled that the confinement petition intentionally contained false information; and (3) he has not shown that Corcoran was personally responsible for the false information entering the petition.

### A. A Petition for Confinement Relying on Knowingly False Information Does Not Satisfy Due Process

An individual who has been found not guilty by reason of insanity may be civilly committed "as long as he is both mentally ill and dangerous, but no longer." *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992). Once "the State lacks 'clear and convincing evidence' that [the committed individual] meets both conditions," due process requires that he be released. *Martin v. Bartow*, 628 F.3d 871, 874 (7th Cir. 2010) (quoting *Foucha*, 504 U.S. at 80). The Illinois Mental Health and Developmental Disabilities Code outlines Illinois's procedure for evaluating and committing individuals consistent with the above constitutional requirement. *See* 405 ILCS 5/3-601. The Northern District of Illinois has found that the Code's procedure, if followed, provides sufficient "checks and balances against inappropriate detention" to satisfy one's due process right. *McKinney v. George*, 556 F. Supp. 645, 650 (N.D. Ill. 1983), aff'd, 726 F.2d 1183 (7th Cir. 1984).

Corcoran argues that Lawrence's confinement was extended consistent with the Code, and so his due process right cannot have been violated. Both sides agree that the Code's facial requirements were satisfied. Instead, Lawrence claims that his

5

caregivers knowingly lied when they certified that he was mentally ill. Dkt. 1 at ¶27; *see* 405 ILCS 5/3-601; 405 ILCS 1/1-119.

This Court and the Seventh Circuit have analogized the emergency commitment procedures of the Illinois Code to the constitutional requirements for a lawful arrest. *See Villanova v. Abrams*, 972 F. 2d 792, 798-99 (7th Cir. 1992); *Baltz v. Shelley*, 661 F. Supp. 169, 178 (N.D. Ill. 1987). Just as a warrant cannot pass constitutional muster if it relies on knowing or reckless false statements, *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003), a deliberately false certification of mental illness is inconsistent with the Code and, by extension, due process. *Olsen v. Karwoski*, N.E.2d 444, 450 (1979) (noting that a physician's certification that he examined a patient when he allegedly did not, raised an issue of probable cause). Procedural regularity alone is not a shield. Lawrence's due process claim thus turns on whether he has sufficiently pled the alleged false statements and Corcoran's responsibility for them.

### B. Lawrence's Allegation of False Information is Sufficient to Survive a Motion to Dismiss

Lawrence's due process claim depends on his having sufficiently pled that the confinement petition intentionally included false information. The same is true of his unlawful seizure theory, which apparently is based on the falsification of evidence. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017) (holding that a person detained through a legal process that relied on knowingly false statements had a valid Fourth Amendment claim). As noted earlier, he need not provide "detailed factual allegations," but the pleadings must state "more than mere labels and conclusions." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation

6

marks omitted). In practice, we look for "a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Court asks itself "*could* these things have happened, not *did* they happen." *Id.*

Corcoran argues that the complaint must fail because it does not specify what claims were actually false in this allegedly false petition. Relying on a Second Circuit case, he contends that a complaint alleging fabrication of evidence requires identification of the specific evidence that was falsified to survive a motion to dismiss. *See Jackson v. County of Rockland*, 450 Fed. Appx. 15, 18-19 (2d Cir. 2011). But even if this is the appropriate standard, Lawrence meets it.

Despite Corcoran's claims otherwise, Lawrence does identify the specific evidence that he believes was falsified. In his complaint, Lawrence states that the petition falsely alleged that he was mentally ill. Dkt. 1 at ¶27(a). By identifying this specific falsehood, the plaintiff moves past "labels and conclusions" and provides the Court with a story that *could* have happened. The story goes like this: (1) Lawrence was adjudicated not guilty by reason of insanity; (2) over the course of his confinement he recovered to the point that he was no longer mentally ill; and (3) his medical caregivers were aware of his recovery but, because of Corcoran's desire to punish Lawrence, they falsely claimed that he was still ill in order to extend his confinement. This narrative is supported by the claims that his symptoms were in substantial remission while at Chester, and that at Elgin he made progress and attended therapy. *Id.* at ¶¶6, 9. It is too early to say whether this is what *did* happen, but it is plausible, and that is all that is needed at this stage.

7

Corcoran insists that it is implausible to say that Lawrence was not mentally ill. After all, Lawrence was previously ruled unfit to stand trial and was held not guilty by reason of insanity. But Lawrence had been receiving state treatment since September 2017. He was to be released in March 2019, a year and a half later. It is not implausible that in that time he would have recovered to such an extent that he was no longer mentally ill. And claiming as much does not imply that he was never mentally ill. The Court disagrees that his claim "necessarily impl[ies] the invalidity of [his] criminal conviction." *Haywood v. Hathaway*, 842 F.3d 1026, 1028 (7th Cir. 2016). Perhaps an expert in psychiatry would find the alleged recovery implausible, but that is a question for another day—perhaps requiring the opinion of an expert.

While the complaint could have been more detailed regarding the petition's shortcomings, such detail is not required at this stage. By specifically identifying the false portion of the confinement petition, Lawrence has met his present burden.

### C. Lawrence's Allegation of Corcoran's Personal Responsibility Is Also Sufficient

In order to make out a claim of supervisory liability under § 1983, the plaintiff needs to show the supervisor's "personal involvement" in the alleged violation. *Matthews v. City of East St. Louis*, 675 F. 3d 703, 708 (7th Cir. 2012). Personal involvement can be demonstrated by showing that the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988). Here, the complaint adequately pleads Corcoran's personal involvement.

8

Lawrence alleges that Corcoran was well known to be prejudiced against patients who exercised their right to refuse medication. Dkt. 1 at ¶18. He created a culture of fear where staff and patients risked severe professional and personal consequences if they acted inconsistently with his prejudices. *Id.* at ¶¶18, 21-22. This cultural coercion, along with possible direct threats, led Lawrence's social worker to file the false petition and his psychiatrist to falsely certify it. *Id.* at ¶15, 16, 21. Corcoran also personally certified the false petition. *Id.* at ¶16. In other words, Corcoran was aware of the false statement and certified it.

Corcoran argues that the allegations are too general and vague. It is true that more specific examples of Corcoran's coercion would make the complaint more persuasive. But the plaintiff need not provide "detailed factual allegations" when pleading. *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). Lawrence provides a plausible account of Corcoran's personal involvement and so survives the motion to dismiss.[1]

## IV. Conclusion

For the stated reasons, the defendant's Motion to Dismiss is denied.

E N T E R:

Dated: October 19, 2020

MARY M. ROWLAND
United States District Judge

---

[1] Plaintiff sought leave to file a sur-reply. [17] The Court has not relied on the briefing in the sur-reply, so the motion to file a sur-reply is denied as moot.

9