IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENZIL LAWRENCE, | ) | |
| | ) | No. 19 cv 5078 |
| Plaintiff, | ) | |
| | ) | Hon. Mary M. Rowland |
| v. | ) | |
| | ) | |
| JAMES P. CORCORAN, individually, as | ) | |
| Statewide Forensic Medical Director | ) | |
| for the Illinois Department of Human | ) | |
| Services, Medical Administrator III, | ) | |
| | ) | |
| Defendant. | ) | |

### ANSWER TO PLAINTIFF'S COMPLAINT
### FOR DAMAGES WITH REQUEST FOR TRIAL BY JURY

Defendant, James P. Corcoran, by and through his attorney Kwame Raoul, Attorney General of the State of Illinois, and for his Answer to Plaintiff's Complaint for Damages with Request for Trial by Jury states the following:

### I. INTRODUCTION

This is an action brought by Denzil Lawrence, a person previously confined in the custody of Illinois Department of Human Services ("State") at Elgin Mental Health Center, to vindicate profound deprivations of his constitutional rights caused by institutionally based prejudice and persecution.

**ANSWER: Defendant admits that Plaintiff was previously involuntarily admitted and treated at the Elgin Mental Health Center ("Elgin MHC"), which is a facility administered by the Illinois Department of Human Services ("IDHS"). Defendant denies the remaining allegations of this paragraph.**

### II. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the U.S. Constitution, and it is brought pursuant to 42 U.S.C. §§ 1983 and 1988. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

**ANSWER: Defendant admits the allegations contained in Paragraph 1.**

2.   This case is instituted in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391, as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

**ANSWER: Defendant admits the allegations contained in Paragraph 2.**

### III.  PARTIES

3.   At all times relevant hereto, Plaintiff Denzil Lawrence was a resident of the State of Illinois and a legal resident of the United States of America.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.**

4.   At all times relevant hereto, Defendant James Patrick Corcoran ("Defendant" or "Corcoran") was a resident of the State of Illinois and a citizen of the United States, and was acting under color of state law in his capacity as an officer employed by Illinois Department of Human Services. Corcoran is sued individually for actions and omissions taken under color law while working in his official capacity as a senior administrator of Elgin Mental Health Center and/or consultant in the Illinois Department of Human Services.

**ANSWER: Defendant admits that he is a resident of the State of Illinois, a citizen of the United States and is employed by the IDHS. Defendant further admits that the allegations in this lawsuit pertain to actions Defendant took in his capacity as the Statewide Forensic Medical Director for IDHS. Defendant denies the remaining allegations contained in Paragraph 4.**

### IV.  BACKGROUND FACTUAL SUMMARY AND GENERAL ALLEGATIONS BASED UPON INFORMATION AND REASONABLE BELIEF

5.   Plaintiff was adjudicated not guilty by reason of insanity ("NGRI") in the Circuit Court of Will County, on charges of arson and criminal damage to property in February 2018. He was had been committed to the custody of the Illinois Department of Human Services ("IDHS") for inpatient mental health treatment, initially at Chester Mental Health Center ("CMHC") as unfit to stand trial on September 26, 2017, and subsequently beginning August 18, 2018, he was held at Elgin Mental Health Center (EMHC). His *Thiem* date (the date beyond which his involuntary NGRI commitment could not be constitutionally continued) was March 20, 2019.

**ANSWER: Defendant denies the allegations of Paragraph 5 to the extent that the allegations imply that an individual cannot constitutionally be involuntarily committed past his *Thiem***

2

**date even if a valid petition for involuntary commitment is filed prior to that individual's release. Defendant admits the remaining allegations contained in Paragraph 5.**

6. While he was committed at CMHC, Plaintiff took psychotropic medications but experienced unacceptable weight gain as a side effect. Ultimately, after researching risks and benefits of medications, and after substantial remission of his earlier psychotic symptoms, he made an informed choice to try to recover more fully from mental illness without drugs. He never ruled out medical treatment, including with psychotropic drugs, in the event that he again became symptomatic. His psychiatrist at CMHC did not subsequently insist on Plaintiff being prescribed any particular prescription medication.

**ANSWER: Defendant denies that Plaintiff took psychotropic medications while at Chester Mental Health Center ("Chester MHC"). Upon information and belief, Plaintiff initially refused medication while incarcerated in the Will County Jail before being transferred to Chester MHC. Defendant further denies that Plaintiff was not prescribed any medications while at Chester MHC. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 6.**

7. When he was transferred to EMHC in August 2018, he was assigned to the psychiatrist Dr. Richard Malis. Dr. Malis initially suggested (and the Plaintiff tentatively agreed) to take quetiapine, an anti-psychotic drug, after giving him a "likely" diagnosis "in the spectrum between delusional disorder and schizophrenia."

**ANSWER: Defendant admits the allegations contained in Paragraph 7.**

8. By early September 2018, the Plaintiff has lost confidence in Dr. Malis and elected not to take psychotropic medications. He began to carefully document his disagreements with EMHC staff, made various attempts to obtain relevant records, and filed many specific written complaints with the Office of the Inspector General (OIG).

**ANSWER: Defendant admits Plaintiff started refusing to take recommended medications. Defendant further admits Plaintiff filed complaints with the Office of the Inspector General. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8.**

9. Despite a handful of minor "incidents" involving disagreements with peers or staff on the clinical units at EMHC, none of which involved any physical altercations or violence, monthly Treatment Plan Reports consistently stated between August 2018 and March 2019, that the Plaintiff was making some progress, cooperating with unit rules, and attending recommended therapy groups.

**ANSWER: Defendant admits that Plaintiff had several incidents with peers and staff at Elgin MHC but denies that these incidents were "minor," as they frequently involved aggressive and threatening behavior. Defendant further denies that Plaintiff fully cooperated with unit rules. Defendant admits the remaining allegations contained in Paragraph 9.**

10. During his entire time at EMHC, the Plaintiff was never considered to be in need of emergency involuntary medication, restraint or seclusion, either for his own or anyone else's protection.

**ANSWER: Defendant admits the allegations contained in Paragraph 10.**

11. Throughout his time at EMHC, up until Mid-March of 2019, clinicians on the Plaintiff's treatment teams were collaborating with him to develop relapse prevention and aftercare plans wherein he would be residing safely in the community with his parents in Florida and receiving any needed outpatient psychiatric and substance abuse treatment through a local Veterans' Administration facility. The expectation that he would be leaving EMHC on his *Thiem* date was entirely implicit and apparently unquestioned.

**ANSWER: Defendant admits Plaintiff worked with clinicians at Elgin MHC to develop a release prevention and aftercare plan for him to reside with his parents in Florida and receive outpatient psychiatric and substance abuse treatment through a local Veterans' Administration facility. Defendant further admits that the treatment team contemplated Plaintiff's *Thiem* date as a potential release date. Defendant denies the remaining allegations in Paragraph 11.**

12. On or about March 13, 2019, exactly one week before the Plaintiff had to be released, unknown to the Plaintiff a decision was purportedly made by the Plaintiff's treatment team psychiatrist, Dr. Vikramjit Gill, M.D., to file an involuntary civil commitment petition in Kane County Circuit Court ("Petition"), alleging (in summary) that the Plaintiff was mentally ill and thereby dangerous to himself or others, meeting the definition in Section 1-119 of the Illinois Mental Health and Developmental Disabilities Code, 405 ILCS 5/1-119, of a "person subject to involuntary admission on an inpatient basis."

**ANSWER: Defendant admits that Plaintiff's treatment team filed a petition for involuntary civil commitment in the Kane County Circuit Court pursuant to 405 ILCS 5/1-119 ("commitment petition"). Defendant denies the remaining allegations in Paragraph 12.**

13. Subsequently on March 20, 2019, without the knowledge of the Plaintiff, some hours after the Plaintiff should legally have been released, the threatened Petition was in fact filed, and the Plaintiff was held at EMHC, rather than released.

4

**ANSWER: Defendant admits the commitment petition was filed on March 20, 2019, and that Plaintiff continued to be held at Elgin MHC subsequent to the filing of the commitment petition. Defendant denies the remaining allegations contained in Paragraph 13.**

14. Plaintiff's father had actually traveled to Elgin from Florida to pick him up and take him home, fully expecting that his son would be released on his *Thiem* date of March 20, 2019, according to the long-established plan.

**ANSWER: Defendant admits Plaintiff's father traveled to Elgin from Florida to receive Plaintiff. Defendant denies the remaining allegations contained in Paragraph 14.**

15. The Petition itself, alleging that the Plaintiff was a "person subject to involuntary admission on an inpatient basis" was signed by Melissa Perkins, the Plaintiff's clinical social worker on N Unit at that time.

**ANSWER: Defendant admits the allegations contained in Paragraph 15.**

16. The petition was accompanied by two certificates, one of Dr. Vikramjit Gill, M.D., and one of the Defendant James P. Corcoran, intended to certify pursuant to Section 3-702 of the Illinois Mental Health and Developmental Disabilities Code [405 ILCS 5/3-702] that the Plaintiff was subject to involuntary admission on an inpatient basis and containing other information.

**ANSWER: Defendant admits the allegations contained in Paragraph 16.**

17. On information and belief, Defendant James P. Corcoran was the actual instigator of the false involuntary civil commitment petition against the Plaintiff. Corcoran exerted undue influence upon social worker Perkins and psychiatrist Dr. Gill, to file and certify the petition at the last possible minute. As a Medical Administrator III and Statewide Forensic Medical Director, he was their boss, and he was in a powerful position to negatively impact or even end their careers as state mental health professionals. But for Corcoran's undue influence over Gill and Perkins, the civil commitment petition against the Plaintiff would not have been filed, and he would have been released on March 20, 2019. As a direct result of the false Petition, the Plaintiff was falsely imprisoned for a period lasting from March 20, 2019 for a period of ninety days, lasting until his release from EMHC after the falsely filed Petition was dismissed on June 20, 2019 in the state court.

**ANSWER: Defendant admits he is the Statewide Forensic Medical Director and that Plaintiff was held at Elgin MHC from March 20, 2019 to June 20, 2019 and was released following the Kane County State's Attorney's withdrawal of the commitment petition. Defendant denies the remaining allegations contained in Paragraph 17.**

18. On information and belief, Dr. Corcoran is well known to be unreasonably prejudiced against forensic mental patients who decide to exercise their rights to refuse psychotropic medication, even when such decisions are based on legal and competent free choice, fully informed of risks and benefits. He has expressed opinions and directly advised patients that if they do not comply with the recommendations of orthodox American psychiatrists employed by the State of Illinois (including taking of prescribed psychotropic medication), or do not convincingly profess strong belief in the diagnoses given to them by orthodox American psychiatrists employed by the State of Illinois, they should not and will not, if he has anything to say about it, be released from involuntary commitment.

**ANSWER: Defendant denies the allegations contained in Paragraph 18.**

19. On information and belief, one psychiatrist at EMHC who is most loyal and supportive of Defendant Corcoran's points of view is Dr. Richard Malis, the Plaintiff's treating psychiatrist who prescribed psychotropic medications.

**ANSWER: Defendant admits Dr. Malis was one of Plaintiff's treating psychiatrists and prescribed psychotropic medications. Defendant denies the remaining allegations contained in Paragraph 19.**

20. The Plaintiff, a well-educated East African immigrant who served honorably in the United States military in a combat role in Afghanistan, not only successfully refused to take psychiatric drugs, but also committed the affront of refusing to accept Dr. Richard Malis as his psychiatrist, and subsequently Plaintiff was able to fully recover drug-free and obtain the substantial collaboration of his clinical treatment team toward his release from EMHC.

**ANSWER: Defendant admits Plaintiff is an immigrant and a veteran of the United States military. Defendant denies Plaintiff is East African as, upon information and belief, Plaintiff was born in Guyana, which is in South America. Defendant admits Plaintiff has at various points refused to take prescribed medications and refused to see Dr. Malis. Defendant lacks knowledge or information sufficient for form a belief as to the truth or falsity as to Plaintiff's allegations that he is well-educated and that he served honorably in a combat role in Afghanistan. Defendant denies the remaining allegations contained in Paragraph 20.**

21. On information and belief, Defendant Corcoran has directly, indirectly or impliedly threatened both Dr. Vikramjit Gill and social worker Melissa Perkins in the past, suggesting that they could suffer unfavorable employment consequences should they fail to effectively coerce their patients to take psychiatric drugs and profess full belief in their orthodox diagnoses.

**ANSWER: Defendant denies the allegations contained in Paragraph 21.**

22. In short, anyone, patient or employee, who does not toe Defendant Corcoran's line in the forensic mental health system of the Illinois Department of Human Services, or who gives any impression that they do not adequately respect his status or his orthodox mental health culture, is threatened with negative consequences. The Plaintiff suffered retribution born of Defendant Corcoran's unlawful coercion in violation of the Constitutional rights of the Plaintiff when Defendant Corcoran used fear of retribution perpetrated against both patients and staff who do not comply with his illegal orders. Vikramjit Gill and Melissa Perkins were credibly threatened with similar retribution and acted from self-protection.

**ANSWER: Defendant denies the allegations contained in Paragraph 22.**

### V. CLAIMS FOR RELIEF

**False imprisonment, denial of due process of law, violation of 42 U.S.C. § 1983 Under the Fourth and the Fourteenth Amendment to the Constitution of the United States**

23. Plaintiff hereby incorporates Paragraphs 5-22, as if set forth here in their entirety.

**ANSWER: Defendant hereby incorporates his Answers to Paragraphs 5-22, as if set forth here in their entirety.**

24. Plaintiff was in custody and under the control of Defendant during and at all times described in this Complaint.

**ANSWER: Defendant admits Plaintiff was held and treated at Elgin MHC, which is a facility administered by IDHS. Defendant denies the remaining allegations contained in Paragraph 24.**

25. At all times described in this Complaint, Plaintiff was an unarmed, defenseless male and disabled person, such that he was no match for the trained and sophisticated Defendant, who was an experienced mental health professional with custodial authority over the Plaintiff as an educated and licensed as a medical doctor specializing in psychiatry.

**ANSWER: Defendant admits that he is a trained and licensed medical doctor specializing in psychiatry. Defendant further admits that Plaintiff did not possess any firearms and was disabled in that he was diagnosed with a mental illness during his time at Elgin MHC. Defendant denies the remaining allegations contained in Paragraph 25.**

26. All of the described acts and/or omissions by the Defendant were intentional, knowing, willful, wanton, malicious and/or in reckless in disregard for the Plaintiff's federally protected rights and welfare, and these acts were done with deliberate indifference by the Defendants, acting under color of state law.

7

**ANSWER: Defendant denies the allegations contained in Paragraph 26.**

27. With deliberate indifference to the rights of citizens to be free from false imprisonment, Defendant ordered, encouraged, tolerated, ratified, and acquiesced to a dangerous environment of psychological brutality through the false imprisonment of the disabled, and other deprivations of essential, fundamental humanity under auspices of "mental health treatment" by:

   a. Falsely alleging that Plaintiff was mentally ill, filing false court documents including coercion of other subordinate staff in filing a civil commitment petition to force Plaintiff to continue to be imprisoned in the Elgin Mental Health Center while also failing to subject himself or his staff sufficient training or supervision with respect to the constitutional limitations on the incarceration and false imprisonment of patients, especially the Plaintiff;

   b. failing to adequately punish unconstitutional false imprisonment of patients, especially the Plaintiff;

   c. ordering and tolerating the false imprisonment of patients, especially the Plaintiff;

   d. failing to properly or neutrally investigate whether his own actions and actions which he ordered others to take would create the false imprisonment of patients, especially the Plaintiff; and,

   e. ordering, tolerating, encouraging, and permitting collusive statements among the staff, investigators and the police to discourage proper investigation and cover up crimes and illegal abuse in such situations.

**ANSWER: Defendant denies the allegations contained in Paragraph 27.**

28. On information and belief, Defendant ordered and/or permitted staff members at the Facility, under a "mental health" pretense, to falsely imprison disabled individuals when such activities are unnecessary, unjustified and contrary to any conceivable standard as "treatment". Defendant also coerced staff or failed or refused to supervise and train staff in the appropriate constitutional implications and limits on false imprisonment, despite knowing that these staff are critical to the protection of the constitutional rights of the patients, and therefore may create a significant risk of injury to the public who are patients at Elgin Mental Health Center, especially the Plaintiff.

**ANSWER: Defendant denies the allegations contained in Paragraph 28.**

29. Under a pretense and with the cynical, false justification of "encouraging adherence" to treatment recommendations, the Defendant used tactics of coercion, false

8

imprisonment and mental abuse to punish and threaten patients at the EMHC to establish a brutal and dehumanizing environment of control, instead of collaborating and rationally explaining benefits and risks of treatment in the spirit of their legal obligations under informed consent and legal and moral obligation to provide real help to the Plaintiff.

**ANSWER: Defendant denies the allegations contained in Paragraph 29.**

30. Under a pretense and with the cynical, false justification of "encouraging insight" into mental illness, the Defendant used false imprisonment to punish and threaten patients at the Facility, especially the Plaintiff, into robotic "lip service" and enforced, totalistic faith in the orthodoxy of mental-illness-as-brain-disease, instead of rationally explaining any actual, existing science in the field of aberrant human behavior, cognition and emotion to the patients, especially the Plaintiff.

**ANSWER: Defendant denies the allegations contained in Paragraph 30.**

31. The more Defendant Corcoran, habitually resorted to coercion and false imprisonment to obtain what he called "treatment adherence" and "insight" from patients, the more dependent he became on such tactics, and the more he lost any abilities he might have had, which courts and the public naturally expect him to employ, as a doctor and healer.

**ANSWER: Defendant denies the allegations contained in Paragraph 31.**

32. On information and belief, Defendant actively worked to find no fault with staff conduct, and to assure that no fault is found by any outside investigators, so long as any story at all is offered by staff in response to a patient complaint, regardless of how incredible such response is wherein the Defendant, willfully failed to prevent the ongoing false imprisonment of the Plaintiff.

**ANSWER: Defendant denies the allegations contained in Paragraph 32.**

33. Defendant routinely ratifies, acquiesces, rubber stamps, and tolerates malicious collusive conduct and unconstitutional actions of staff by routinely ignoring serious complaints of false imprisonment and other corrupt acts against patients, especially the Plaintiff, and by encouraging fabrication of evidence by the staff.

**ANSWER: Defendant denies the allegations contained in Paragraph 33.**

34. As a direct and proximate result of the wrongful conduct of the Defendant, Plaintiff has been substantially injured. These injuries include, but are not limited to, loss of constitutional

and federal rights, loss of normal good family relations, loss of income, physical injuries, physical and mental impairments, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages for medically/psychologically related treatment necessitated by the unconstitutional and brutal concerted conduct of the Defendant.

**ANSWER: Defendant denies the allegations contained in Paragraph 34.**

35. The Plaintiff now suffers from these injuries, with an inability to consistently live a normal life free from the trauma caused by the very staff charged with responsibility for his treatment or rehabilitation.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 35, but denies that he engaged in any wrongdoing of any kind.**

36. The Plaintiff also suffers persisting emotional damage the extent of which has not yet been fully ascertained. Plaintiff continues to suffer ongoing emotional distress, with significant stress related symptoms.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 36.**

37. Plaintiff is also entitled to punitive damages on all claims against the individual Defendants personally, to redress their willful, malicious, wanton, reckless and fraudulent conduct.

**ANSWER: Defendant denies the allegations contained in Paragraph 37.**

## AFFIRMATIVE DEFENSES

1. Defendant is a government official who performed discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable psychiatrist objectively viewing the facts and circumstances that confronted Defendant could have believed his actions to be lawful, in light of clearly-established law and the information that said Defendant possessed. Defendant is therefore entitled to qualified immunity as a matter of law.

## JURY DEMAND

Defendant respectfully requests a trial by jury for all issues so triable.

Respectfully submitted,

KWAME RAOUL
*Attorney General*　　　　　　　　　　By:　/s/ Hal Dworkin
*State of Illinois*　　　　　　　　　　　　　HAL B. DWORKIN
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　General Law Bureau
　　　　　　　　　　　　　　　　　　　　100 W. Randolph Street, 13th Floor
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois  60601
　　　　　　　　　　　　　　　　　　　　(312) 814-5159
　　　　　　　　　　　　　　　　　　　　Hdworkin@atg.state.il.us


### CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2020, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/DKT the above **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**.  Parties of record may obtain a copy through the CM/DKT system which will send notification of such filing(s) to all counsel of record.

By:　*/s/ Hal Dworkin*
　　　ASSISTANT ATTORNEY GENERAL